UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| United States of America, | Case No. 16-cr-0193 (WMW/BRT) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Ronald David Johnson, | |
| Defendant. | |

Defendant Ronald David Johnson was convicted in June 2017 of wire fraud and money laundering. Before the Court are eleven pro se postconviction motions and several additional pro se letter requests and notices. For the reasons addressed below, Johnson's motions for the return of seized property are granted in part and denied in part, and Johnson's remaining motions and requests are denied.

**BACKGROUND**

A jury found Johnson guilty of ten counts of fraud on June 19, 2017. The Court subsequently ordered the forfeiture of certain property owned by Johnson, including a personal money judgment, real property, and several vehicles. That forfeiture became final as to Johnson when the Court sentenced him in November 2017. *See* Fed. R. Crim. P. 32.2(b)(4)(1). Johnson appealed his convictions and sentence on November 28, 2017. Thereafter, this Court denied Johnson's pro se motion to stay the forfeiture of his property and his subsequent motion to reconsider that decision. Johnson appealed this Court's denial of his motion to reconsider on June 27, 2018. Both Johnson's November

28, 2017 appeal of his convictions and sentence and his June 27, 2018 appeal of the forfeiture issue are pending before the United States Court of Appeals for the Eighth Circuit.

Meanwhile, in June and July 2018, Johnson moved for the return of property that law enforcement officers seized from him in March 2016.[1] In a November 13, 2018 Order, this Court denied those motions in part after concluding that Plaintiff United States of America has a continuing evidentiary need for the vehicle title documents, photographs, briefcase, and business records seized from Johnson. But as to a Rolex watch and 36 firearms that Johnson seeks, the record was insufficient to permit a ruling. Consequently, the Court ordered the parties, including Johnson's trial counsel Aaron J. Morrison, to supplement the record as to the chain of custody of the Rolex watch and 21 of the seized firearms that are no longer in the possession of the United States. The Court also ordered Johnson to identify a suitable person to whom the United States should transfer the 15 firearms that remain in the possession of the United States.

Morrison and the United States each responded to the Court's November 13, 2018 Order. Morrison contends that he received the Rolex watch and 21 of the seized firearms from the United States in late 2016 and early 2017, before Johnson's trial. According to Morrison, the Rolex watch and four of the seized firearms remain in a safe in Morrison's custody, and 17 of the seized firearms were sold to a federal licensed firearm dealer. In a

---

[1] Johnson filed a third motion for the return of seized property on February 15, 2019. Because Johnson's third motion raises the same issues that are raised in his first two motions for the return of seized property, this Order addresses all three motions together.

2

January 18, 2017 email attached to Morrison's declaration, Morrison writes that Johnson "has agreed to give up his interest in the firearms" and "understands that I plan to credit [my] sale of the firearms to his outstanding legal fee balance." This email does not address the Rolex watch. The United States asserts that Morrison's memorandum and accompanying declaration are consistent with its understanding as to the chain of custody of these items.

Johnson subsequently filed two pro se responses that neither confirm nor deny the factual statements in Morrison's declaration, including Morrison's assertion that Johnson agreed to credit the sale of these firearms to his outstanding legal fee balance.[2] Instead, Johnson reiterates that these items have not been returned to him and that Morrison is not in contact with him.[3] Johnson also seeks to have his seized property transferred to his mother-in-law Eva Loose who, according to Johnson, is not influenced or controlled by Johnson and will not allow Johnson to possess or exert influence over the firearms. The United States opposes the transfer of Johnson's firearms to Loose, arguing that she is too susceptible to Johnson's influence to receive them.

In addition, Johnson filed eight pro se motions after the Court issued its November 13, 2018 Order. These motions seek four categories of relief: (1) the issuance of an appealable order on all of his outstanding motions; (2) permission to represent six

---

[2] Although the record reflects that the United States served its response on Johnson by mail, the record is unclear as to whether Johnson received a copy of Morrison's response memorandum or declaration.

[3] The Eighth Circuit granted Morrison's motion to withdraw as appointed counsel on April 5, 2018, and appointed a new attorney to represent Johnson in the appeal of his convictions and sentence.

3

corporations, an order compelling service of forfeiture notices on these corporations, and an order compelling the return of forfeited assets to these corporations; (3) a new trial and release from custody until that new trial occurs; and (4) an emergency hearing as to all of his outstanding motions and permission for Johnson to attend that hearing in person.[4] The Court addresses each of the pending motions in turn.

## ANALYSIS

### I. Johnson's Motions for the Return of Seized Property

Johnson seeks the return of title documents for four vehicles, business records, photographs, a briefcase, a Rolex watch, and 36 firearms. The Court previously denied Johnson's motions with respect to the title documents, business records, photographs, and briefcase. The Court addresses the Rolex watch and the 36 firearms based on the supplemented record.

Under Federal Rule of Criminal Procedure 41(g), a party deprived of property by the United States as part of a criminal investigation may move to have the property returned. Such proceedings for the return of seized property "do not become moot merely because the government is no longer in possession of the property in question." *United States v. Hall*, 269 F.3d 940, 942 (8th Cir. 2001); *accord Thompson v. Covington*, 47 F.3d 974, 975 (8th Cir. 1995) (citing *Soviero v. United States*, 967 F.2d 791, 792-93

---

[4] The Court also has received several letters in support of Johnson's motions, sent directly from Johnson's wife, a former business associate, and a victim of Johnson's crimes. The Court is mindful that these individuals are personally affected by this case. However, because they are not parties to this case and the contents of their letters are not material to the Court's decisions on Johnson's pending motions, their letters will not be considered.

4

(2d Cir. 1992)). When the United States no longer retains possession of the seized property, the district court must determine what happened to the property. *United States v. Willson*, 8 F. App'x 593, 595 (8th Cir. 2001) (citing *United States v. Chambers*, 192 F.3d 374, 376-78 (3d Cir. 1999)). If the district court learns that the seized property no longer is in the government's possession because it has been lost, destroyed, or transferred to a third party, the Rule 41(g) movant may pursue an alternative claim for monetary damages, but only if such a claim is cognizable. *Hall*, 269 F.3d at 943; *accord Soviero*, 967 F.2d at 793 (stating that a Rule 41(g) movant "should be permitted to seek damages if the district court determines the government's conduct renders it liable for such").

Here, the now-supplemented record establishes that the United States returned a Rolex watch and 21 firearms to Morrison in late 2016 and early 2017, before Johnson's trial. At that time, Morrison was Johnson's retained counsel in this case and acted on Johnson's behalf. *Cf. Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991) (explaining that an attorney is an agent of his or her client). As such, the United States did not lose, destroy, or transfer to a third party the Rolex watch or the 21 firearms. Instead, the United States returned this property *to Johnson* through his then-retained attorney. *See United States v. Wilson*, 495 F. Supp. 2d 144, 146-47 (D. Maine 2007) (denying Rule 41(g) motion with respect to seized Gucci watch that the government returned to defense counsel). Whatever dispute may exist between Johnson and Morrison as to their legal-fee arrangements, nothing in the record demonstrates that Johnson has a cognizable claim against the United States for monetary damages with respect to the Rolex watch and 21

5

firearms. Accordingly, Johnson's motions for the return of seized property are denied with respect to these items.

An additional 15 firearms remain in the possession of the United States. Johnson requests that these 15 firearms be transferred to his mother-in-law Eva Loose who, according to Johnson, is not influenced or controlled by Johnson and will not allow Johnson to possess or exert influence over the firearms. The United States opposes the transfer of Johnson's firearms to Loose, arguing that "her close relationship with the Johnson family and her unfamiliarity with the firearms make[ ] her too susceptible to [Johnson's] influence to receive the weapons."

As the Court observed in its November 13, 2018 Order, Johnson is not permitted to possess firearms because he is a convicted felon. *See* 18 U.S.C. § 922(g)(1). A district court cannot order a federal agency to return a firearm to a convicted felon or to any person who would be willing either to give the felon access to the firearm or to follow instructions from the felon as to the future use of the firearm. *Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015). At the felon's request, a court may order the transfer of the firearm either to a person who will maintain custody of the firearm without permitting the felon to exert influence over its use or to a firearms dealer who agrees to sell the firearm and provide the felon with the profit of the sale. *Id.* at 1786-87. A court may approve the transfer of firearms consistent with Section 922(g) "if, but only if, that disposition *prevents the felon from later exercising control* over those weapons, so that he could either use them or tell someone else how to do so." *Id.* at 1786 (emphasis added). Although a court can consider a proposed transferee's promise to keep the firearms away

from the felon, "such a pledge, of course, might fail to provide an adequate safeguard, and a court should then disapprove the transfer." *Id.* at 1787.

Johnson asserts that Loose will not allow him to possess or exert control over the firearms. But he provides no evidence to support this unsworn, conclusory assertion, and the record contradicts Johnson's statements. The United States sent an investigator to meet with Loose at her home on February 1, 2019. And the investigator's sworn declaration is included in the record in this case. Johnson represented to the Court in December 2018 that Loose is not influenced or controlled by Johnson and that she will not allow Johnson to possess or exert influence over the firearms. But when the investigator met with Loose two months later, Loose did not know any details about the firearms and only vaguely recalled that Johnson's wife had mentioned them to her in the past. Notably, Loose also did not know or recall how many firearms there were, nor did she know where she would store them or that she would not be permitted to give them to Johnson's family for storage or use.

It is true that Loose subsequently signed a written acknowledgement, prepared by the United States, confirming that she will not give, sell, or lend the 15 firearms to Johnson or his immediate family. But before signing this acknowledgement, Loose attempted to consult with Johnson's wife to discuss this issue. This is significant for several reasons. When Johnson first proposed to the United States that the firearms should be transferred to Loose in October 2018, he directed the United States to contact his wife to arrange the transfer. But Johnson's wife is not an appropriate transferee of the firearms, and the record in this case reflects that she has repeatedly resisted attempts by

7

the United States to locate assets that may be subject to forfeiture and to effectuate the forfeiture of Johnson's property.

The totality of the record strongly suggests that Johnson would attempt to exert influence over Loose to obtain possession or control of the firearms. For these reasons, Loose is not an appropriate transferee of these firearms.

Because Johnson has not designated an appropriate individual to receive the 15 firearms that the United States now possesses, the Court may order the transfer of these firearms to a firearms dealer who agrees to sell them and give Johnson any profits from their sale. *Id.* at 1786. However, the Court is mindful that Johnson has appealed his convictions and his appeal remains pending. Should Johnson prevail in his appeal, his status as a felon might change along with his eligibility to possess firearms. In light of this possibility, the United States shall retain custody of Johnson's 15 firearms until the direct appeal of Johnson's convictions has concluded. If after the conclusion of his direct appeal Johnson remains a felon, the United States must transfer the 15 firearms to a firearms dealer to be sold. The proceeds of those sales must be paid to Johnson.

## II. Johnson's Motions for "Final Disposition"

Johnson moves the Court to enter a "final disposition" and "a final appealable order" on all of his previously filed motions. A motion for "final disposition" is not procedurally proper. Moreover, the motions and briefs that Johnson identifies for disposition were either addressed and resolved in the Court's November 13, 2018 Order or are resolved in this Order based on the supplemented record. Johnson's motions for "final disposition" are denied.

### III. Johnson's Motions as to Representation of Corporations

Johnson continues to assert that he may represent corporate entities. As this Court has observed in this case repeatedly, a pro se party such as Johnson cannot represent the interests of corporate entities. *See Steele v. City of Bemidji*, 257 F.3d 902, 905 (8th Cir. 2001) (stating that a "non-lawyer has no right to represent another entity in federal court" (citing *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994)); *Restatement (Third) of the Law Governing Lawyers* § 4 cmt. d (2000) ("In general, however, a person appearing pro se cannot represent any other person or entity, no matter how close the degree of kinship, ownership, or other relationship."). Johnson contends that the Eighth Circuit authorized him to represent corporations pro se. But Johnson is mistaken. The Eighth Circuit's July 25, 2018 Order, on which Johnson relies, grants Johnson authorization "to file a pro se brief setting out any issues he wishes the [Eighth Circuit] to consider in Appeal No. 18-2455." Nothing in the Eighth Circuit's order authorizes Johnson to represent corporations. Johnson is not a lawyer, and he cannot represent corporate entities or any individual *other than himself*.

Moreover, to the extent that Johnson's pro se motions continue to address the merits of any forfeiture issues, this Court lacks jurisdiction over those issues in light of Johnson's June 27, 2018 appeal. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *accord Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998). Because Johnson appealed this Court's

9

forfeiture decisions, this Court lacks jurisdiction to consider the merits of Johnson's motions with respect to any forfeiture issue that has been appealed.

For these reasons, Johnson's motions for permission to represent corporate entities, to compel service of forfeiture notices on these corporations, and to compel the return of forfeited assets to these corporations are denied.

### IV. Johnson's Motions for a New Trial and Release from Custody

Johnson moves for a new trial and for release from custody until a new trial is granted. As addressed above, a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58; *accord Gundacker*, 151 F.3d at 848. Because Johnson appealed his convictions and sentence, this Court lacks jurisdiction to consider the merits of his motion for a new trial and his related motion for release from custody. Accordingly, those motions are denied.

### V. Johnson's Motion for an Emergency Hearing

In light of the foregoing conclusions, and because Johnson has demonstrated no basis for the Court to schedule an emergency hearing, Johnson's motion for an emergency hearing is denied, as are his letter requests seeking the same.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendant Ronald David Johnson's motions for the return of seized property, (Dkts. 168, 180, 237), are **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Plaintiff United States of America shall retain custody of the 15 firearms in its possession until the direct appeal of Johnson's convictions has concluded. If Johnson remains a felon after the conclusion of his direct appeal, the United States shall transfer the 15 firearms to a firearms dealer to be sold. The proceeds of such sales shall be paid to Johnson.

    b. Johnson's motions for the returned of seized property are denied in all other respects.

2. Defendant Ronald David Johnson's motions for "final disposition," (Dkts. 206, 209), are **DENIED**.

3. Defendant Ronald David Johnson's motions for permission to represent corporate entities, to compel service of forfeiture notices on these corporations, and to compel the return of forfeited assets to these corporations, (Dkts. 213, 224), are **DENIED**.

4. Defendant Ronald David Johnson's motion for a new trial, (Dkt. 219), and his related motion for release from custody pending a decision on his motion for a new trial, (Dkt. 220), are **DENIED**.

5. Defendant Ronald David Johnson's motion for an emergency hearing, (Dkt. 229), is **DENIED**.

Dated:  February 25, 2019                                s/Wilhelmina M. Wright
                                                         Wilhelmina M. Wright
                                                         United States District Judge